UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------
:
MICHELE MALANGA, :
: 14-cv-9681
Plaintiff, :
: OPINION & ORDER
-against- :
:
NYU LANGONE MEDICAL CENTER :
AND SCHOOL OF MEDICINE, *et al.*, :
:
Defendants. :
:
------------------------------------------------

WILLIAM H. PAULEY III, United States District Judge:

      Defendants NYU Langone Medical Center and School of Medicine, et al. ("NYU") move for summary judgment dismissing Plaintiff Michele Malanga's claims. For the reasons that follow, NYU's motion is granted in part and denied in part.

## BACKGROUND

      This is a New York City Human Rights Law ("NYCHRL") hostile work environment and False Claims Act ("FCA") retaliation action. In November 2015, this Court pared down Malanga's claims, dismissing the New York Labor Law, New York State Human Rights Law, and aiding and abetting claims on grounds that Malanga had failed to state a claim for relief. See Malanga v. NYU Langone Med. Ctr., 2015 WL 7019819, at *5 (S.D.N.Y. Nov. 12, 2015). After extensive discovery, NYU now seeks to dismiss the remaining claims—a NYCHRL claim against NYU and Dr. Silvia Formenti and an FCA retaliation claim against NYU.

      The facts relevant to resolving NYU's motion for summary judgment are taken from the parties' respective statements of material facts. In June 2011, Malanga began her

employment as Director of Research Administration for the Department of Radiation Oncology (the "Department") at NYU's School of Medicine. (Def. Rule 56.1 Statement of Material Facts ("Def. 56.1 Statement"), ECF No. 79, ¶ 1.) Malanga reported to Dr. Formenti, the Department Chair, during her tenure at NYU. (Def. 56.1 Statement, ¶ 1.)

As Director of Research Administration, Malanga was tasked with ensuring the Department's compliance with federal and state regulations as well as NYU's procedures and protocol in connection with a number of federally funded clinical studies. (Def. 56.1 Statement, ¶¶ 4(a), 7.) Malanga also supervised data managers and oversaw the assignment of research procedures. (Def. Rule 56.1 Statement, ¶ 6; Pl. Rule 56.1 Statement of Material Facts ("Pl. 56.1 Statement"), ECF No. 88, ¶ 6.)

Beginning in 2013, Malanga complained about Dr. Formenti's billing practices. (Pl. Rule 56.1 Statement, ¶ 11.) These complaints were based on a wide range of alleged misconduct: mislabeling research tubes, submitting false bills to the government, and quid pro quo arrangements between Dr. Formenti and the laboratories the Department used to process lab work. (Pl. Rule 56.1 Statement, ¶¶ 11–12.) Malanga also believed that Dr. Formenti improperly routed unused grant funds toward a discretionary fund for the Department Chair. (Pl. Rule 56.1 Statement, ¶ 13.)

Following her complaints about fraudulent billing, Malanga's once positive and productive relationship with Dr. Formenti turned toxic. (Pl. Rule 56.1 Statement, ¶ 15.) Malanga claims she was subject to a hostile work environment when Dr. Formenti began making discriminatory comments regarding her sexual orientation. (Pl. Rule 56.1 Statement, ¶¶ 14–15.) Between early 2013 and Malanga's termination in October of that year, Dr. Formenti "grunted and [ ] referred to [Malanga] as 'butch' on approximately three occasions." (Pl. Rule 56.1

Statement, ¶ 16.) Dr. Formenti also characterized Malanga's clothing as "dykey" and told Malanga that she "dressed like a dyke" at least two or three times within the relevant period. (Pl. Rule 56.1 Statement, ¶ 16.)

Separately, in September 2013, NYU received a complaint regarding Malanga's conduct toward a nurse in the Department. (Def. Rule 56.1 Statement, ¶ 8.) The nurse reported that she feared Malanga would hurt her and her family. (Def. Rule 56.1 Statement, ¶ 8.) NYU commenced an investigation and conducted numerous witness interviews. (Def. Rule 56.1 Statement, ¶ 9.) These interviews revealed an alleged pattern of troubling behavior—a number of witnesses explained that Malanga used offensive and menacing language around them, including racial slurs and threats of aggression, which created a disruptive work environment. (Def. Rule 56.1 Statement, ¶¶ 10–16.) NYU's investigator memorialized his findings in a report and discussed them with his supervisors to assess whether a final written warning or a termination was warranted. (Def. Rule 56.1 Statement, ¶ 17.) Based on the "severity of her disruptive and potentially actionable behaviors affecting the work environment of the Department," NYU decided to terminate Malanga. (Def. Rule 56.1 Statement, ¶ 17.) In late September 2013, NYU's human resources department informed Dr. Formenti of its decision to terminate Malanga, and on October 8, 2013, NYU terminated her. (Def. Rule 56.1 Statement, ¶ 18.)

## DISCUSSION

I. Standard

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court is not "to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The "mere existence of a scintilla of evidence" is insufficient to defeat summary judgment; rather, there must be enough "evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In cases involving "discriminatory intent, direct evidence of that intent will only rarely be available, so affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks and alterations omitted).

II. Claims Against the Proper Defendant

As an initial matter, NYU seeks summary judgment on the basis that Malanga named the wrong entities as defendants in this action. NYU contends that while Malanga's employer is New York University, Malanga incorrectly sued NYU Langone Medical Center and School of Medicine ("Langone") and NYU Hospitals Center ("NYU Hospitals")—entities that are not "capable of being sued." (Def. Memo. of Law in Support of Summary Judgment ("SJ Mot."), ECF No. 78, at 6.)

The irony in this argument is that NYU has litigated this case for nearly three years under the auspices of the entities which it now claims are incapable of being sued. It is a bizarre, if not disingenuous, argument to make at this juncture in the litigation. Malanga, in response, devotes a section of her opposition brief explaining why naming Langone and NYU Hospitals is not fatal to her claims. In any event, she cross-moves to amend her complaint to name New York University as the proper defendant. (Pl. Memo of Law in Support of Cross-Motion to Amend and Opposition to Summary Judgment ("Opp."), ECF No. 87, at 2–3).

4

Perhaps realizing that its tactical move to dismiss this action—based solely on procedural niceties—was ill-fated, NYU came to its senses and withdrew its argument without prejudice. (Def. Reply in Support of Summary Judgment, ECF No. 90, at 1 n.1.) Notwithstanding that, this Court finds that there is good cause to substitute New York University in place of Langone and NYU Hospitals as the proper defendant. Doing so would not prejudice New York University in any way—New York University was Malanga's employer during the relevant period, participated in virtually all stages of this litigation since its inception in 2014, and knew all along that neither Langone nor NYU Hospitals was Malanga's employer. See Vadenais v. Christina, 325 F.2d 157, 158 (2d Cir. 1963) (leave to amend should be granted to correct misnaming of defendant); Circuito Cerrado Inc. v. La Camisa Negra Restaurant & Bar Corp., 2011 WL 1131113, at *2 (E.D.N.Y. Mar. 7, 2011) ("Where there is notice and no discernible prejudice, amendment has been allowed to correct the name of a sued party while a suit is pending or even after judgment."). Accordingly, Langone and NYU Hospitals are dismissed from this action, and Malanga's cross-motion to file a Second Amended Complaint substituting New York University for Langone and NYU Hospitals is granted.

III. Hostile Work Environment

Turning to the merits, the first of Malanga's two remaining claims is that she was subjected to a hostile work environment on the basis of her sexual orientation in violation of the NYCHRL. "[D]iscrimination in the workplace on the basis of sexual orientation is recognized under the [New York State Human Rights Law] and [New York City Human Rights Law]." Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 412 (S.D.N.Y. 2012) (citing N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin Code § 8–107(1)(a)). While a plaintiff must show that the conduct "at issue created a work environment that is both objectively and subjectively

5

hostile, [ ] the environment need not be unendurable or intolerable." Fenner v. News Corp., 2013 WL 6244156, at *13 (S.D.N.Y. Dec. 2, 2013). Under the "NYCHRL's simplified inquiry, the plaintiff need only show that her employer treated her less well than other similarly situated employees, at least in part for discriminatory reasons." Fenner, 2013 WL 6244156, at *13.

Nevertheless, the "plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. It is not enough that a plaintiff has an overbearing or obnoxious boss." Mihalik v. Credit Agricole Cheuvreux N. Am. Inc., 715 F.3d 102, 111 (2d Cir. 2013) (emphasis added). At the very least, "[s]he must show that she has been treated less well at least in part because of her [sexual orientation]." Mihalik, 715 F.3d at 111 (emphasis original).

While courts are usually tasked with balancing the discriminatory effects of the alleged misconduct in determining whether there is a genuine issue of discriminatory motive, this Court need not wade into those details here. The facts suggest that Dr. Formenti directed her comments at Malanga in retaliation for Malanga's billing-related complaints, not because Dr. Formenti knew or perceived her to be lesbian. Malanga asserts that she was "subjected to harassment based on her sexual orientation and that she was treated 'less well' because of her sexual orientation," but nothing in the record reveals a discriminatory motive behind Dr. Formenti's actions and words. (Opp. at 6.) Rather, record evidence strongly establishes that Dr. Formenti's actions were designed to harass, intimidate, and retaliate for Malanga's complaints about Dr. Formenti's billing practices. (Pl. Rule 56.1 Statement, ¶¶ 15–20; see also Opp. at 8 ("[O]nce Plaintiff began engaging in protected activities, Dr. Formenti began using Plaintiff's sexual orientation as a weapon to harass and to intimidate Plaintiff from engaging in any further

6

protected activities.").) Put another way, these actions are evidence of retaliatory motive rather than discriminatory animus.

Malanga's own deposition testimony corroborates that view: "The relationship [between me and Dr. Formenti] changed because I was dealing with her billing issues and her not following the protocols and things like that." (Def. Rule 56.1 Statement, Ex. A, at 99–100.) Tellingly, Malanga's relationship with Dr. Formenti had been quite positive prior to her decision to complain about the fraudulent billing practices. According to Malanga, Dr. Formenti was "very, very pleased" that she was addressing departmental issues and "thrilled that [Malanga] was identifying shortcomings or shortfalls of her previous staff who had been there." (Def. Rule 56.1 Statement, Ex. A, at 101.) And there is not a shred of evidence that Malanga was mistreated prior to 2013 by Dr. Formenti or anyone else on the basis of her sexual orientation. In view of these facts, Malanga fails to demonstrate that she was "treated less well at least in part because of her [sexual orientation]." Mihalik, 715 F.3d at 110. Accordingly, NYU's motion for summary judgment on the NYCHRL hostile environment claim is granted.

IV.    False Claims Act Retaliation Claim

Malanga's remaining claim is that NYU retaliated against her for repeatedly objecting to departmental billing practices and subsequently investigating these potential FCA violations. As a result of engaging in this activity, Malanga alleges that she was terminated.

To state a claim for retaliation under Section 3730(h) of the FCA, a plaintiff must demonstrate that (1) she was engaged in conduct protected under the statute; (2) the employer was aware or knew that she was engaged in such conduct; and (3) the employer discharged, discriminated against, or otherwise retaliated against her because of the protected conduct. United States ex rel. Wood v. Allergan, Inc., 2017 WL 1233991, at *37 (S.D.N.Y. Mar. 31,

7

2017). The thrust of NYU's argument regarding the FCA claim is that Malanga's actions do not qualify as protected activity under the FCA. NYU contends that Malanga's complaints do not constitute a "claim of fraudulent government billing or any FCA violations" and instead amounted to "nothing more than her doing her job." (SJ Mot. at 12.)

Under the first element, protected conduct encompasses two kinds of actions: (1) lawful acts done by the employee in furtherance of an action under the FCA, and (2) other efforts to stop one or more violations of the FCA. 31 U.S.C. § 3730(h)(1); United States v. N. Adult Daily Health Care Ctr., 205 F. Supp. 3d 276, 298 (E.D.N.Y. 2016). While the scope of protected activities should be "interpreted broadly, [ ] a plaintiff must at least demonstrate that his or her investigation, inquiries and complaints were conducted with the purpose of exposing a fraud upon the government." United States ex rel. Smith v. Yale Univ., 415 F. Supp. 2d 58, 102, 103 (D. Conn. 2006). Protected conduct includes both investigating potential fraudulent billing practices and "internal reporting of false claims." Yale, 415 F. Supp. 2d at 103; Allergan, 2017 WL 1233991, at *37 (statute protects steps taken to remedy misconduct through methods such as internal reporting to a supervisor or company compliance department).

NYU urges this Court to adopt a higher standard to plead protected conduct, arguing that employees like Malanga, whose jobs encompass investigating fraud against the government, must "make clear [their] intentions of bringing or assisting in an FCA action in order to overcome the presumption that [they were] merely acting in accordance with [their] employment obligations." United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1523 n.7 (11th Cir. 1996); Fisch v. New Heights Academy Charter Sch., 2012 WL 4049959, at *6 (S.D.N.Y. 2012) ("Naturally, an employee who simply engages in behavior

wholly consistent with his job description will not, without more, provide notice that he is acting in furtherance of an FCA action.").

But as this Court held in resolving NYU's earlier motion to dismiss, "it is doubtful that [such] heightened pleading standards survive[d] FERA, which was enacted to counter perceived judicial interpretations of the protected activity prong." Malanga, 2015 WL 7019819, at *3. Protected conduct encompasses actions taken in furtherance of an FCA action, which is broadly interpreted as "conduct that was calculated to, or reasonably could lead to a viable FCA action." Ameti ex rel. United States v. Sikorsky Aircraft Corp., 2017 WL 2636037, at *10 (D. Conn. June 19, 2017). Malanga is not "required to have filed an FCA lawsuit or develop[ed] a winning claim." Ameti, 2017 WL 2636037, at *10 (citing Yale, 415 F. Supp. 2d at 102). All that is required is that Malanga engaged in activity that led to the "distinct possibility of evidence" that an FCA violation occurred. Ameti, 2017 WL 2636037, at *10 (internal quotation marks omitted and emphasis added). And the "ultimate failure to find such evidence" does not doom a retaliation claim. Ameti, 2017 WL 2636037, at *10. Malanga must simply "demonstrate that [ ] her investigation, inquiries, and complaints were conducted with the purpose of exposing a fraud upon the government." Ameti, 2017 WL 2636037, at *10 (citing Grant v. Abbott House, 2016 WL 796884, at *7 (S.D.N.Y. Feb. 22, 2016); Swanson v. Battery Park City Auth., 2016 WL 3198309, at *5 (S.D.N.Y. June 8, 2016) ("[T]he employee was [merely] engaged in efforts to stop an FCA violation, even if the employee's actions were not necessarily in furtherance of an FCA claim.").

Here, Malanga has proffered enough evidence to create a genuine dispute of material fact as to all three elements of her FCA claim. First, there is evidence suggesting that Malanga engaged in protected activity—detecting, identifying, and following up on fraudulent

billing practices for projects funded by the U.S. government. (Pl. Rule 56.1 Statement, ¶¶ 8, 11–13.) She did not express an intent to bring an action under the FCA, but she certainly exposed a potential fraud on the government by identifying deficient billing practices and attempting to curtail them—creating the "possibility of evidence of an FCA violation" that qualifies as protected conduct. Ameti, 2017 WL 2636037, at *10. Second, others within the Department knew about Malanga's activities. Dr. Formenti directed Malanga to stop complaining and investigating, and to stay away from these issues. (Pl. Rule 56.1 Statement, ¶ 11.) Malanga also apprised NYU's Human Resources Department about her attempts to stop what she perceived was fraudulent billing. (Def. Rule 56.1 Statement, Ex. A at 147:4–148:4; Pl. Rule 56.1 Statement, ¶ 21.) And third, Malanga offers evidence of retaliation in two different ways: being subject to a hostile environment and being terminated for pretextual reasons. (Pl. Rule 56.1 Statement, ¶¶ 14–17, 22–41.)

NYU counters the third element with proof that Malanga was fired for an independent, non-retaliatory reason—namely, that a co-worker had complained about Malanga's hostile behavior in the workplace and that an investigation corroborated those allegations. (SJ Mot. at 13–14.) Upon articulating a "non-retaliatory reason for the [termination], the presumption of retaliation . . . drops from the picture," and Malanga "must then come forward with evidence that the . . . proffered [nonretaliatory] reason is a mere pretext for actual [retaliation]." Krause v. Eihab Human Serv., Inc., 2015 WL 4645210, at *10 (E.D.N.Y. Aug. 4, 2015) (internal quotation marks and citations omitted).

In FCA retaliation cases, whether pretext must be analyzed under a "mixed-motive" or "but-for" standard of causation is an open question. Krause, 2015 WL 4645210, at *10 ("The Second Circuit has yet to address whether" the but-for standard in Title VII cases

10

"also applies to retaliation cases under the FCA."). In the mixed-motive context, an employer is liable if its actions are motivated "at least in part" by retaliation. In a but-for context, liability arises when an adverse action would not have been taken but for an employer's unlawful conduct. Krause, 2015 WL 4645210, at *10. "[A] plaintiff's [termination] can have multiple 'but-for' causes, each one of which may be sufficient to support liability." Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013).

Even assuming the more stringent but-for standard applies, Malanga has "raised a triable issue of fact as to whether [NYU's] stated reasons were pretextual and a retaliatory motive was the true impetus for [its] decision." Krause, 2015 WL 4645210, at *10 (citing Forkell v. Lott Assisted Living Corp., 2012 WL 1901199, at *12 (S.D.N.Y. May 21, 2012)). Malanga sufficiently rebuts NYU's non-retaliatory reason with evidence that NYU's investigation into her co-worker's complaint constituted pretext. The timing of the investigation into Malanga's actions—and the complaints giving rise to such an investigation—plausibly create a genuine dispute underlying NYU's reason for terminating Malanga. As Malanga argues, NYU only became aware of her co-worker's complaint after Malanga objected to Formenti's discriminatory and retaliatory actions. (Pl. Rule 56.1 Statement, ¶¶ 22–24.) The temporal proximity between her co-worker's complaint and NYU's subsequent investigation, "shortly after [Malanga's] complaints about [Formenti's] [ ] mistreatment . . . is evidence of a retaliatory motive." Meyers v. Medco Health Solutions, Inc., 2015 WL 1500217, at *10 (S.D.N.Y. Mar. 31, 2015).

Moreover, although Malanga's termination occurred several months after Malanga first complained about billing practices, "a court may overlook a longer gap in time between the protected conduct and an adverse employment action where the pattern of retaliatory

11

conduct begins soon after the protected conduct and only culminates later in actual discharge."
Billue v. Praxair, Inc., 2007 WL 1231841, at *8 (D. Conn. Apr. 26, 2007), aff'd 2008 WL 4950991 (2d Cir. Nov. 20, 2008) (internal citations, quotation marks, and alterations omitted).

Malanga also notes that while NYU investigated her co-workers' complaints about her, it never commenced an investigation into Malanga's complaints regarding billing practices during the same period. (Pl. Rule 56.1 Statement, ¶ 25.) And finally, Malanga lodges several objections to the findings of NYU's investigation, highlighting various inconsistencies that undermine the basis for NYU's decision to terminate her. (Pl. Rule 56.1 Statement, ¶¶ 27–41.) NYU, of course, proffers other evidence to show that Malanga may have had serious issues with her co-workers. (Def. Rule 56.1 Statement, ¶¶ 10–15.) But these conflicting facts are precisely the reason why there is a genuine dispute regarding whether NYU's retaliation was the but-for cause of Malanga's termination. It is a question of fact that a jury is properly suited to answer. Accordingly, NYU's motion for summary judgment on the FCA retaliation claim is denied.

## CONCLUSION

For the foregoing reasons, NYU's motion for summary judgment is granted as to Malanga's NYCHRL hostile work environment claim. NYU's motion for summary judgment is denied as to the FCA retaliation claim. Additionally, Malanga's cross-motion to amend the caption is granted. Malanga is directed to file her amended complaint reflecting New York University as the proper defendant by October 13, 2017. Finally, the parties are directed to submit a joint pretrial order by November 10, 2017 and appear for a final pretrial conference on November 16, 2017 at 11:00 a.m.

The Clerk of Court is directed to substitute New York University in place and stead of Defendants NYU Langone Medical Center and NYU Hospitals Center in the caption of this action. The Clerk of Court is also directed to terminate the motions pending at ECF Nos. 77 and 87.

Dated: October 5, 2017
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.