Todd J. Krakower (TK-4568)
KRAKOWER DICHIARA LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: (201) 746-6333
Fax: (347) 765-1600

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

**MICHELLE MALANGA,**                                       **SECOND AMENDED COMPLAINT**

           **Plaintiff,**

       -against-                                       **14-CV-9681 (WHP)**

**NEW YORK UNIVERSITY,**

           **Defendant.**                                 **DEMAND FOR JURY TRIAL**

-------------------------------------------------------x

Plaintiff MICHELLE MALANGA, by and through her attorneys, upon personal knowledge as to herself and upon information and belief as to other matters, brings this Complaint against Defendant NEW YORK UNIVERSITY, and alleges as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff brings this lawsuit seeking recovery against Defendant for Defendant's violations of the anti-retaliation provisions of the Federal False Claims Act, Pub. L. No. 99-562 § 2, 100 Stat. 3153 (1986), codified at 31 U.S.C. §§ 3729-33 ("False Claims Act").

### JURISDICTION AND VENUE

2.     This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions because this case is brought under the False Claims Act, 31 U.S.C. § 3730(h).

3.     This Court has supplemental jurisdiction over the New York state law claims under 28 U.S.C. § 1367(a), as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claim is based occurred in this District.

5.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

## THE PARTIES

**Defendant**

6.     All actions and omissions described in this Complaint were made by Defendant directly and/or through its supervisory employees and agents.

7.     Defendant's actions and omissions described in this complaint and causing injury to Plaintiff were done knowingly and willfully.

**Defendant New York University**

8.     Upon information and belief Defendant New York University is a Not-for-Profit university organized under the laws of the State of New York and doing business in the State of New York.

9.     At all times relevant herein, Defendant New York University had and has a principal place of business, executive offices, and facilities at 550 First Avenue, New York, New York, 10016, in New York County.

**Plaintiff Michelle Malanga**

10.     Plaintiff is an adult individual who is a resident of New York, New York, in New York County.

11.     Plaintiff is a woman.

12.     Plaintiff is a Homosexual.

13.     At all times relevant to this Complaint Plaintiff was an "employee, contractor, or agent" of Defendant within the meaning of the False Claims Act, 31 U.S.C. § 3730(h).

## FACTUAL ALLEGATIONS

14.     Plaintiff was employed by Defendant as the Director of Research for the Radiation Oncology Department from June 20, 2011 through October 8, 2013 when she was unlawfully terminated.

15.     Throughout her employment with Defendant Plaintiff performed satisfactorily and at all times either met or exceeded Defendant's reasonable business expectations.

16.     Throughout her employment with Defendant Plaintiff consistently received yearly performance reviews sufficient to award her merit increases.

17.     Plaintiff was also recognized by Defendant for her exemplary efforts during Hurricane Sandy, during which Plaintiff rescued valuable specimens essential to Formenti's research.

**Violations of the False Claims Act**

18.     In 2013 Plaintiff became aware that NYU employees were unlawfully billing tests performed on research bloods to the federal government so as to avoid using funds from study grants.

19.     In 2013 Plaintiff became aware that NYU employees were unlawfully billing the federal government whereby employees overcharged federal grants for patient clinic visits, indicating that the patient visited with Formenti despite Formenti not seeing the patient.

20.     Defendant's billing practices were outside the scope of Plaintiff's job duties.

21.     Such unlawful billing of blood test specimens constituted and constitutes violations of the False Claims Act.

22.     After Plaintiff discovered such unlawful billing practices, Plaintiff initiated an investigation into the unlawful billing practices.

23.     Plaintiff's investigation was directed at exposing a fraud upon the government.

24.     Plaintiff made Defendant aware that Plaintiff was investigating Defendant's unlawful billing practices.

25.     Defendant was aware Plaintiff was investigating Defendant's unlawful billing practices.

26.     Plaintiff's investigation revealed that, upon information and belief, Defendant had in fact submitted false claims to the Federal Government.

27.     By investigating Defendant's unlawful billing practices, Plaintiff engaged in an activity protected by the False Claims Act.

28.     After Plaintiff discovered a pattern of unlawful billing of blood test specimens, Plaintiff complained about said practices to Formenti.

29.     After Plaintiff discovered a pattern of unlawful billing of blood test specimens and patient visits, Plaintiff complained about said practices to Maria Fenton-Kerimian, R.N., Defendant's employee.

30.     After Plaintiff discovered a pattern of unlawful billing practices, Plaintiff complained about said practices to Defendant NYU's management including, but not limited to, Sheila Pope, Defendant's billing manager.

31.     After Plaintiff discovered a pattern of unlawful billing practices, Plaintiff made multiple complaints that Defendant's billing practices violated federal law, including multiple complaints to Formenti,

32.     After Plaintiff discovered a pattern of unlawful billing practices, Plaintiff made multiple complaints that Defendant's billing practices violated federal law, including multiple complaints to Fenton-Kerimian.

33.     After Plaintiff discovered a pattern of unlawful billing practices, Plaintiff made multiple complaints that Defendant's billing practices violated federal law, including multiple complaints to Sheila Pope.

34.     After Plaintiff discovered a pattern of unlawful billing practices, Plaintiff made multiple complaints that Defendant's billing practices violated federal law, including multiple complaints to Martin Donach.

35.     In so complaining, Plaintiff engaged in an activity protected by the False Claims Act.

36.     Plaintiff made it known to Defendant's management that Defendant's billing practices were illegal.

37.     Defendant was aware that Plaintiff contemplated informing the federal government of Defendant's unlawful billing practices.

38.     Immediately after Plaintiff discovered such unlawful billing of blood test specimens, Plaintiff informed Dr. Formenti that the Defendant's employees should

immediately cease such unlawful billing of blood test specimens, and should thereafter desist from any further unlawful billing of blood test specimens.

39.     Immediately after Plaintiff complained about said practices, Formenti reprimanded Plaintiff and told her to "stay out of it."

40.     Formenti vocalized concerns that she (Formenti) was going to get into trouble with the authorities.

41.     Formenti ordered Plaintiff to cease investigating the unlawful billing practices

42.     Immediately after Plaintiff discovered such unlawful billing of blood test specimens, Plaintiff informed Fenton-Kerimian that the Defendant's employees should immediately cease such unlawful billing of blood test specimens, and should thereafter desist from any further unlawful billing of blood test specimens.

43.     Formenti did not remedy the unlawful billing practices of blood test specimens, but instead disregarded Plaintiff's complaints and permitted employees to continue unlawfully billing tests to federal funds.

44.     Fenton-Kerimian did not remedy the unlawful billing practices of blood test specimens, but instead disregarded Plaintiff's complaints and permitted employees to continue unlawfully billing tests to federal funds.

45.     On or about September 2013, Plaintiff again noticed blood test samples were being billed to federal funds—rather than the correct research grant—in violation of the False Claims Acts.

46.     Plaintiff then made efforts to correct the billing on the blood test specimens to ensure that false claims would not be submitted to the federal government.

47.     Making such efforts to correct Defendant's billings was outside the scope of Plaintiff's job duties.

48.     In making such efforts to correct Defendant's billing practices, Plaintiff engaged in an activity protected by the False Claims Act.

49.     Defendant was aware that Plaintiff made efforts to correct the billing on the blood test specimens.

50.     In or around 2013, Plaintiff became aware that Formenti was paying for the salary of a post-doctorate employee Leonard Liebes, PhD out of an unrelated federal grant in exchange for free research sample processing, and Plaintiff investigated this allegation further.

51.     Plaintiff's investigation revealed that, upon information and belief, said post-doctorate employee did not perform work related to the federal grant from which Formenti funded his salary.

52.     Such a deal involving misuse of federal funds is a direct violation of the False Claims Act.

53.     After learning of the misuse of federal grant money, Plaintiff complained to Formenti that such dealing was a misuse of federal funds.

54.     Defendant was aware that Plaintiff contemplated informing the federal government of Defendant's unlawful misuse of federal grant money.

55.     By complaining of the misuse of federal grant money, Plaintiff engaged in a protected activity under the False Claims Act.

56.     Defendant was aware that Plaintiff engaged in activities that are protected by the False Claims Act.

**Retaliation in Violation of the False Claims Act**

57.     After Plaintiff complained of Defendant's pattern of false billing and violations of federal law and immediately after Fenton-Kerimian noticed that Plaintiff had made efforts to correct such billing information and, thereby, engaged in a protected activity pursuant to the FCA, Fenton-Kerimian retaliated against Plaintiff by making unfounded, malicious, and false complaints to Defendant's Human Resources Department.

58.     Fenton-Kerimian also complained to Defendant's Human Resources Department that Plaintiff corrected a false billing of Fenton-Kerimian.

59.     Formenti corroborated Fenton-Kerimian's unfounded, malicious, and false allegations in retaliation for Plaintiff's engagement in a protected activity pursuant to the FCA.

60.     Formenti further retaliated against Plaintiff by making additional unfounded, malicious, and false complaints about Plaintiff to Defendant's Human Resources Department.

61.     Upon information and belief, Defendant's Human Resources Department failed to undertake a meaningful investigation of Fenton-Kerminian's complaints against Plaintiff.

62.     Upon information and belief, Defendant's Human Resources Department failed to undertake a meaningful investigation of Formenti's complaints against Plaintiff.

63.     Upon information and belief, Defendant's Human Resources managers took no steps whatsoever to determine whether Fenton-Kerminian's complaints were founded.

64.     Upon information and belief, Defendant's Human Resources managers took no steps whatsoever to determine whether Formenti's complaints were founded.

65.     Plaintiff complained to Defendant's Human Resources that Formenti and Fenton-Kerimian made false complaints about her [Plaintiff] in retaliation for having engaged in a protected activity.

66.     Plaintiff complained to Defendant's Human Resources that Formenti and Fenton-Kerimian made false complaints about her [Plaintiff] in retaliation for attempting to have Defendant's practices comply with federal laws, rules, and/or regulations.

67.     Upon information and belief, Defendant failed to initiate any investigation into Plaintiff's complaints of retaliation.

68.     Rather, Defendant terminated Plaintiff on October 8, 2013 for engaging in activities protected under the False Claims Act, including correcting Defendant's billing practices to prevent federal funds from being unlawfully charged and complaining of other misuses of federal funds.

69.     The False Claims Act specifically protects individuals such as Plaintiff who make efforts to prevent False Claims Act violations.

70.     By terminating Plaintiff in response to Fenton-Kerimian's and Formenti's unfounded complaints, Defendant violated the anti-retaliation provision of the False Claims Act.

**Other Retaliation for Engaging in Protected Activities**

71.     At times during the course of her employment, Plaintiff provided direct supervision of the care of individual patients.

72.     In Plaintiff's role of supervising the care of individual patients, Plaintiff was health care employee as that term is defined by §741.

73.     In Plaintiff's role of supervising the care of individual patients, Plaintiff was required to exercise discretion about the care of the individual patients.

74.     On or about September 2013, Plaintiff became aware that Fenton-Kerimian was violating protocols by conducting a study and then failing to follow-up

11

with over three hundred (300) patients on a study conducted by Formenti and Fenton-Kerimian.

75.     Plaintiff discovered that said study was being conducted in violation of relevant laws, regulations, and/or policies and in a manner that subjected the involved patients involved to unnecessary health and safety risks.

76.     Upon information and belief, a patient participating in the study died while the study was still being conducted.

77.     Plaintiff instructed Martin Donach, Defendant's employee and close friend of Formenti, to report the patient death to the Department of Defense as per the terms of the contract Defendant had with the federal government and relevant protocols.

78.     Upon information and belief, Donach and Fenton-Kerimian failed to report the patient death to the appropriate agencies in violation of relevant laws, regulations, and/or policies.

79.     Formenti threatened Plaintiff to not report the patient death to the appropriate agencies.

80.     Defendant's failure to report the patient death demonstrated substantial and specific danger to the health and safety of patients partaking in the same study.

81.     Defendant's failure to report the patient death demonstrated substantial and specific danger to the health and safety of patients receiving treatment through Defendant's facility.

82.     In order to fulfill her professional obligations, including the duty to exercise due diligence to ensure compliance with all applicable laws and regulation, Plaintiff reported the patient death to the Department of Defense.

83.     By reporting the patient dead to the Department of Defense, Plaintiff engaged in a protected activity.

84.     Upon information and belief, said study was ultimately suspended as a result of the patient death.

85.     Formenti and Fenton-Kerimian discovered that Plaintiff reported the patient death to the Department of Defense.

86.     Formenti chastised Plaintiff for ignoring Formenti's threats and blamed Plaintiff for her [Formenti's] study having been suspending.

87.     Fenton-Kerimian immediately began retaliating against Malanga for reporting patient death to the Department of Defense.

88.     Formenti immediately began retaliating against Plaintiff by, inter alia, ridiculing Plaintiff for her sexuality, making loud and aggressive grunting noises at Plaintiff while making animal gestures, calling Plaintiff derogatory names such as "butch," and reprimanding Plaintiff for the suspension of her study.

89.     Additionally, Plaintiff discovered employees in Formenti's department had submitted false research data regarding studies funded by federal grants.

90.    The submission of false research data was in violation of relevant laws, regulations, and/or policies and in a manner that subjected the involved patients involved to unnecessary health and safety risks.

91.    The submission of false research data resulted in substantial and specific danger to the health and safety of the individual patients of the study.

92.    Defendant's failure to report the patient death demonstrated substantial and specific danger to the health and safety of patients receiving treatment through Defendant's facility.

93.    Upon discovering the falsified research data, Plaintiff reported the false data to Formenti and the appropriate governmental agencies.

94.    By reporting the false research data to Formenti and the appropriate governmental agencies, Plaintiff engaged in a protected activity.

95.    In retaliation for Plaintiff's reporting of the false research data, employees within Formenti's department made false complaints to Defendant's compliance hotline alleging that Plaintiff committed various infractions.

96.    After an investigation into the anonymous allegations against Plaintiff, Peter Harrington, Defendant's Compliance Officer, determined the allegations were entirely baseless and fabricated.

97.    Further, Defendant requested Plaintiff register or randomize a research patient for treatment prior to the patient signing an informed consent.

98.     Plaintiff refused to register or randomize a research patient for treatment prior to the patient signing an informed consent as doing so would violate federal regulations and would jeopardize the health and safety of Defendant's patients.

99.     The registration and randomization of a research patient for treatment prior to the patient signing an informed consent would violate relevant laws, regulations, and/or policies in a manner that would subject the involved patient to unnecessary health and safety risks.

100.     By refusing to register or randomize a research patient for treatment prior to the patient signing an informed consent, Plaintiff engaged in a protected activity.

101.     Formenti became aware that Plaintiff refused to register or randomize the research patient, and Formenti increased her harassment of Plaintiff in retaliation

102.     Formenti's harassment of Plaintiff included, inter alia, slandering Plaintiff to attending physicians and research personnel, encouraging other employees to slander Plaintiff to attending physicians and research personnel, and disseminating personal details about Plaintiff's private life among employees.

103.     Additionally, Plaintiff discovered that Fenton-Kerimian's failure to follow up with over three hundred (300) patients and other violations of relevant laws, regulations, and/or policies.

104.     The failure to follow up with over three hundred (300) patients violated relevant laws, regulations, and/or policies in a manner that subjected the involved patients to unnecessary health and safety risks.

15

105.    The failure to follow up with over three hundred (300) patients endangered the health and safety of the individual patients of the study and patients receiving treatment through Defendant's facility and violated the terms of the consent form.

106.    Defendant's failure to follow up with study's over three hundred (300) patients placed the health and safety of the individual patients at risk as Defendant would be unaware of any issues that arose during the course of the patients' treatments.

107.    Plaintiff began drafting a letter to remedy these actions and report to the appropriate governmental agencies documenting Fenton-Kerimian's failure to follow up with over three hundred (300) patients and other violations of relevant laws, regulations, and/or policies.

108.    By drafting a letter to the appropriate governmental agencies in an attempt to remedy these violations, documenting Fenton-Kerimian's failure to follow up with over three hundred (300) patients, Plaintiff engaged in a protected activity.

109.    Fenton-Kerimian discovered that Plaintiff was drafting a letter documenting violations surrounding Fenton-Kerimian's study.

110.    Fenton-Kerimian immediately submitted unfounded complaints against Plaintiff to Defendant's Human Resources Department.

111.    Formenti corroborated Fenton-Kerimian's false and defamatory allegations in retaliation for Plaintiff's engagement in a protected activity.

112.     Plaintiff made a formal complaint to Derek Forte, manager of Defendant's Human Resources Department, that Fenton-Kerimian's unfounded complaints were made in retaliation for Plaintiff's engagement in protected activities.

113.     Upon information and belief, Defendant failed to undertake a meaningful investigation into Plaintiff's complaints of retaliation or undertake any action reasonably calculate to remedy the situation.

114.     Upon information and belief, Defendant's Human Resources Department failed to undertake a meaningful investigation of Fenton-Kerimian's complaints against Plaintiff and took no steps whatsoever to ensure that Fenton-Kerimian's complaints were founded.

115.     Defendant promptly terminated Plaintiff in response to Fenton-Kerimian's complaints against Plaintiff.

116.     Defendant terminated Plaintiff in retaliation for her engagement in protected activities.

**Sexual Orientation Discrimination in Violation of NYSHRL and NYCHRL**

117.     At all times relevant to this Complaint Plaintiff was constantly subjected to sexual orientation discrimination in violation of NYSHRL.

118.     At all times relevant to this Complaint Plaintiff was constantly subjected to sexual orientation discrimination in violation of NYCHRL.

119.     Formenti had actual knowledge of Plaintiff's homosexuality.

120.     Formenti perceived Plaintiff to be homosexual.

121.     Because of Formenti's discriminatory animus toward homosexuals, Formenti purposely subjected Plaintiff to mental anguish and humiliation.

122.     Formenti often used abusive language toward Plaintiff.

123.     Specifically, Formenti routinely made comments about Plaintiff, referring to her as "dyke," "butch," and "butchy," alluding to Plaintiff's sexual orientation.

124.     Formenti also routinely and maliciously made loud grunting noises and made animal gestures in an effort to harass Plaintiff based on her sexual orientation.

125.     Formenti made said discriminatory actions in front of Plaintiff's colleagues so as to publicly denigrate Plaintiff.

126.     Formenti's discriminatory actions humiliated Plaintiff.

127.     Formenti routinely made comments regarding the sexual orientation of Plaintiff's coworkers.

128.     Formenti made such with the purpose of harassing Plaintiff and in an attempt to force Plaintiff to openly come out as homosexual.

129.     Formenti's actions made Plaintiff feel as though she had to hide her sexual orientation for fear of being further ostracized.

130.     Formenti's discriminatory conduct of Plaintiff due to her sexual orientation was severe and pervasive.

131.    Formenti's discriminatory conduct of Plaintiff due to her perceived sexual orientation was severe and pervasive.

132.    On or about July 2011, Defendant's employee Dr. Chaira Magnolfi-Bozzi initiated unwanted physical conduct with Plaintiff by inappropriately touching Plaintiff and kissing her.

133.    Dr. Magnolfi-Bozzi would often ask Plaintiff personal questions pertaining to Plaintiff's sexual orientation, which made Plaintiff uncomfortable.

134.    Said personal comments pertaining to Plaintiff's sexual orientation, as well as the unwanted physical contact and personal questions created a hostile work environment for Plaintiff.

135.    Said personal comments pertaining to Plaintiff's sexual orientation, as well as the unwanted physical contact and personal questions violated Plaintiff's rights to be free from harassment due to her sexual orientation.

136.    Plaintiff complained to Formenti of the sexual harassment by Chiara Magnolfi-Bozzi, but Formenti failed to take any action reasonably calculated to remedy the situation.

137.    In or around August 2013, Plaintiff complained to Ms. Taveras, Defendant's Human Resources manager, about Formenti's harassment of and discrimination against Plaintiff, but Defendant failed to take any action reasonably calculated to remedy the situation.

138.   By failing to take any action reasonably calculated to remedy the situation, Defendant violated Plaintiffs rights pursuant to the NYSHRL and NYCHRL.

139.   Defendant's discriminatory actions towards Plaintiff caused Plaintiff severe anxiety and mental anguish.

## FIRST CLAIM FOR RELIEF
## RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT

140.   Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

141.   Plaintiff brings this Cause of Action pursuant to the anti-retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h).

142.   By the above actions and omissions Defendant has violated the False Claims Act, 31 U.S.C. § 3730(h), by discriminating and retaliating against Plaintiff in the terms and conditions of her employment including the decision to harass Plaintiff and create a hostile work environment.

143.   By the above actions and omissions Defendant has violated the False Claims Act and 31 U.S.C. § 3730(h), by discriminating and retaliating against Plaintiff in the terms and conditions of her employment including the decision to not to investigate unfounded claims made against Plaintiff.

144.   By the above actions and omissions Defendant has violated the False Claims Act and 31 U.S.C. § 3730(h), by discriminating and retaliating against Plaintiff in

the terms and conditions of her employment including the decision to terminate Plaintiff from her employment with Defendant.

145.   Plaintiff engaged in activities protected under the False Claims Act, including complaining the unlawful billing of the United States.

146.   Plaintiff engaged in activities protected under the False Claims Act, including documenting and preparing to report the unlawful billing of the United States.

147.   Plaintiff documented the fact that Fenton-Kerimian was violating protocols by conducting a study and then failing to follow-up with over three hundred (300) patients and thereby engaged in activities protected by NYLL § 741.

148.   Plaintiff documented the fact that Fenton-Kerimian's study was being conducted in violation of relevant protocols and in a manner that subjected the involved patients involved to unnecessary health and safety risks.   Plaintiff thereby engaged in activities protected by NYLL § 741.

149.   Defendant's violations of laws, statutes, regulations, and/or guidelines promulgated thereunder, created a substantial and specific danger to the public safety.

150.   Plaintiff's documentation of that fact that Fenton-Kerimian was violating protocols by conducting a study, and then failing to follow-up with over three hundred (300) patients, was reasonable and was truthful.

151.    No action was taken by Defendant to investigate Plaintiff's documentation that that Fenton-Kerimian was violating protocols by conducting a study and then failing to follow-up with over three hundred (300) patients.

152.    No action was taken by Defendant to remedy Fenton-Kerimian's violation of protocols.

153.    Fenton-Kerimian falsely told NYU's Human Resources that Plaintiff "threatened" said firearm and claimed that this was done in order to frighten Fenton-Kerimian in retaliation for Plaintiff's engagement in protected activities pursuant to the FCA.

154.    Plaintiff complained to Derek Forte of Defendant's Human Resources department that Fenton-Kerimian's allegations against Plaintiff were made was retaliation for Plaintiff's engagement in a protected activity.

155.    Defendant failed to initiate any meaningful investigation into Plaintiff's complaints of retaliation.

156.    Formenti corroborated Fenton-Kerimian's false accusations about Plaintiff in retaliation for Plaintiff's engagement in protected activities pursuant to the FCA.

157.    Defendant failed to meaningfully investigate Fenton-Kerimian's false accusations about Plaintiff in retaliation for Plaintiff's engagement in protected activities pursuant to the FCA

158.    Formenti ridiculed Plaintiff for her sexuality, making loud and aggressive

grunting noises at Plaintiff while making animal gestures, calling Plaintiff derogatory names such as "butch," in retaliation for Plaintiff's engagement in protected activities pursuant to the FCA.

159.    Defendant failed to meaningfully investigate Plaintiff's complaints of sexual harassment and sexual orientation harassment in retaliation for Plaintiff's engagement in protected activities pursuant to the FCA.

160.    Defendant was fully aware that Plaintiff was engaging in activities protected under the False Claims Act.

161.    Defendant retaliated against Plaintiff because Plaintiff was engaging in activities protected under the False Claims Act.

162.    Plaintiff is entitled to relief as Relief the False Claims Act and 31 U.S.C. § 3730(h), to wit, reinstatement with the same seniority status that Plaintiff would have had but for the discrimination; two (2) times the amount of back pay, interest on the back pay; and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief on all Claims for Relief:

A.    Damages in an amount to be determined at trial

B.    All compensatory and economic damages;

C.    All reasonable expenses incurred by Plaintiff, including court costs and reasonable and necessary attorney fees, including attorney's fees as

provided by statutes, and other relief, both in law and equity, to which

Plaintiff may show herself justly entitled;

D.      All punitive and statutory damages authorized by law;

E.      Pre-judgment and post-judgment interest; and

F.      Such further relief as the Court finds just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with

respect to which she has a right.


Dated: Park Ridge, NJ                      Respectfully submitted,
          October 12, 2017

                                           **KRAKOWER DICHIARA LLC**

                                           By: __s/ Todd Krakower_____
                                                Todd J. Krakower (TK-4568)

                                           77 Market Street, Suite 2
                                           Park Ridge, NJ 07656
                                           T: (201) 746-6333
                                           F: (347) 765-1600

                                           *Attorneys for Plaintiff*