```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------
                                          :
MICHELE MALANGA,                          :
                                          :      14cv9681
                Plaintiff,                :
                                          :      OPINION & ORDER
        -against-                         :
                                          :
NEW YORK UNIVERSITY,                      :
                                          :
                Defendant.                :
                                          :
                                          :
------------------------------------------
```

WILLIAM H. PAULEY III, United States District Judge:

    Plaintiff Michele Malanga ("Malanga") and Defendant New York University ("NYU") bring several motions in limine. For the reasons that follow, Malanga's motion regarding the heightened notice standard for fraud-alert employees is granted, NYU's motion for a "but-for" standard of causation is granted, and Malanga's motion seeking to exclude NYU's four witness statements is granted.

## BACKGROUND

    After more than three years of litigation, the sole remaining cause of action in this case is Malanga's retaliation claim under the False Claims Act ("FCA"). In anticipation of trial, the parties seek determinations on three issues. First, Malanga seeks a ruling from this Court that, in the event a jury designates her as a fraud-alert employee, she is not required to satisfy a heightened notice standard to prove that NYU was aware of her protected activity. NYU seeks a ruling that to prevail on her FCA claim, Malanga must show that her protected activity was a "but-for" cause of her termination. Additionally, Malanga moves to preclude NYU from submitting four witness statements on hearsay and relevance grounds.

I.   Notice Standard for Fraud-Alert Employees

As an initial matter, the question of whether Malanga is a "fraud alert" employee—that is, an employee whose job responsibilities include detecting fraud—is a question of fact that a jury must decide. See e.g., Berkemeier v. Standard Beverage Corp., 171 F. Supp. 3d 1122, 1144 (N.D. Ill. 2016); Pitts v. Howard Univ., 111 F. Supp. 3d 9, 19 (D.D.C. 2015). However, if the jury concludes that Malanga's responsibilities include "fraud alert" duties, Malanga contends that this Court should instruct the jury that the element of notice to NYU about the purported fraud should not be assessed at a higher standard than that required of a non-fraud alert employee.

"To sustain an action for retaliatory discharge under the FCA, a plaintiff must establish: (1) that she was engaged in conduct protected under the statute; (2) that the defendants were aware of her conduct; and (3) that she was terminated in retaliation for that conduct." United States v. N. Adult Daily Health Care Ctr., 205 F. Supp. 3d 276, 297 (E.D.N.Y. 2016). At issue here is the second prong, which requires a plaintiff to prove her "employer was aware that [she] was engaged in" protected conduct. Weslowski v. Zugibe, 626 F. App'x 20, 21 (2d Cir. 2015). Given the dearth of guidance from the Second Circuit on this element, many courts have looked to decisions from the D.C. Circuit and First Circuit, which required "plaintiffs alleging that performance of their normal job responsibilities constitutes protected activity [to] overcome the presumption that they are merely acting in accordance with their employment obligations." Swanson v. Battery Park City Auth., 2016 WL 3198309, at *5 (S.D.N.Y. June 8, 2015) (collecting cases).

Malanga argues that the 2009 amendment to the FCA eliminated that presumption, or as she characterizes it, the "heightened standard" of notice. Before the 2009

2

amendment, the FCA defined protected activity "as employee conduct in furtherance of an [FCA action], including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under" the FCA. Lawrence v. Int'l Bus. Mach. Corp., 2017 WL 3278917, at *6 n.2 (S.D.N.Y. Aug. 1, 2017) (citing False Claims Amendment Act of 1986, Pub. L. 99–562, § 4, 100 Stat. 3153, 3157–58) (1986)). The post-2009 version of the FCA defines it as conduct "in furtherance of an action under [the FCA]." 31 U.S.C. § 3130(h)(1). But the 2009 amendment also expanded the FCA's scope of protected activity, adding a second category: "complaining of regulatory violations may qualify as an effort to stop 1 or more violations of the FCA." N. Adult, 205 F. Supp. 3d at 299; Lawrence, 2017 WL 3278917, at *6 n.2 ("[T]he retaliation provision was amended to cover employee conduct in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."). By expanding the scope of protected activity, Congress made clear that protections under the FCA are designed to cover steps "taken to remedy . . . misconduct through methods such as internal reporting to a supervisor or company compliance department." 155 Cong. Rec. E1295–03, E 1300 (daily ed. June 3, 2009).

Malanga cites this Court's decision on NYU's motion to dismiss to support her contention that fraud-alert employees are not required to satisfy a heightened notice standard. In that Opinion and Order, this Court held that "it is doubtful that [the] heightened pleading standards survive FERA [the 2009 amendment], which was enacted to counter perceived judicial interpretations of the protected activity prong." Malanga v. NYU Langone Med. Ctr., 2015 WL 7019819, at *3 (S.D.N.Y. Nov. 12, 2015). Those "perceived judicial interpretations" predating the 2009 amendment imposed a demanding standard on employees to show that they acted in furtherance of an FCA claim. Thus, evidence that a fraud-alert employee had investigated a

3

fraud was insufficient under the pre-2009 amendment framework. The 2009 amendment, however, lowered the bar to prove protected conduct, enlarging the spectrum of actions an employee could engage in to qualify for statutory protection, "even if [his or her] actions were not necessarily in furtherance of an FCA claim." Malanga, 2015 WL 7019819, at *3.

Of course, the question of whether an employee was engaged in protected activity is closely tied to the question of whether the employer was aware of such activity. In other words, the "the kind of knowledge the defendant must have mirrors the kind of activity in which the plaintiff must be engaged." United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd., 389 F.3d 1251, 1260–61 (D.C. Cir. 2004). NYU maintains that the 2009 amendment held in place the distinction between fraud-alert employees and non-fraud alert employees, requiring the former to take actions exceeding the scope of their ordinary responsibilities for the purpose of establishing notice to their employer. (NYU's Memo. of Law in Opposition to Malanga's Motion In Limine Regarding Notice Standard, ECF No. 114, at 1.) But this Court can discern nothing of the sort from reviewing the 2009 amendment or the cases interpreting it. More importantly, holding fraud-alert employees to a higher notice standard would essentially impose a hardship on a class of plaintiffs who were subject to retaliation simply because they were doing their job—alerting their employers of a fraud and attempting to prevent an FCA violation.

Following the 2009 amendment, "courts have continued to hold that internal reporting suffices to put the employer on notice as long as the employee specifically [told] the employer that he is concerned about fraud." Layman v. MET Labs., Inc., 2013 WL 2237689, at *9 (D. Md. May 20, 2013) (alterations in original). "Given that the current version of [the FCA as amended] no longer limits protected activity to actions in furtherance of potential FCA actions, [the] requirement that employees involved in investigating potential fraud must make

4

clear their intentions of bringing or assisting in an FCA action is no longer required by the statutory text." Jones-McNamara v. Holzer Health Sys., 630 F. App'x 394, 409 n.6 (6th Cir. 2015). Indeed, one court has held that "[s]ince a plaintiff now engages in protected conduct whenever he engages in an effort to stop an FCA violation, the act of internal reporting itself suffices as both the effort to stop the FCA violation and the notice to the employer." Manfield v. Alutiig Int'l Solutions, Inc., 851 F. Supp. 2d 196, 204 (D. Me. 2012); Jones-McNamara v. Holzer Health Sys., Inc., 2014 WL 1671495, at *4 (S.D. Ohio 2014), aff'd 630 F. App'x 394 (6th Cir. 2015) (what is no longer required is to show "that the employer knew that the employee was doing more than her job by bringing or furthering an FCA case"). Thus, a fraud-alert employee does not have to offer any more evidence of notice than a non-fraud alert employee so long as the jury is convinced that the employer was aware of the protected activity. N. Adult, 205 F. Supp. 3d at 299 (proposition that grumbling to the employer about regulatory violations does not constitute protected activity "appears to no longer be valid" and "it is no longer clear that Relators could not bring an action for retaliation having engaged in activity that they were hired and expected to do").

Despite the elimination of a heightened notice standard, a plaintiff must still satisfy each of the related, but distinct, elements of an FCA claim. In other words, proving protected conduct is not co-extensive with proving notice. Jones-McNamara, 2014 WL 1671495, at *5 ("The relevant takeaway from Yuhasz [a pre-2009 case] remains the need for notice of the protected activity to the employer."); but see Dillon v. SAIC, Inc., 2013 WL 324062, at *4 (E.D. Va. Jan. 28, 2013) ("The Fourth Circuit allows for the first and second elements to be combined."). Malanga bears the burden of offering evidence that she engaged in actions to prevent one or more violations of the FCA, and that NYU was aware of this activity.

5

At trial, NYU is free to challenge Malanga's evidence as insufficient. But this determination is squarely within the jury's realm.

II. Standard of Causation

The parties dispute the type of causation that Malanga must prove to prevail on her FCA retaliation claim. Malanga contends that she should only be required to prove that her protected activity was a motivating factor in NYU's decision to terminate her employment. (Malanga's Memo. of Law in Support of Proposed Jury Charges Nos. 20, 23, and 24, ECF No. 105, at 1.) NYU counters that a "but-for" standard of causation is more appropriate in view of the specific language in the FCA statute, which requires that an employer retaliated "because of lawful acts done by the employee . . . in furtherance of an action under [the FCA] or other efforts to stop 1 or more violations of [the FCA]." (NYU's Pre-Trial Memo. of Law, ECF No. 109, at 1–3 (emphasis original and citing 31 U.S.C. § 3730(h)(1)).)

As this Court previously noted, the Second Circuit has not addressed this issue, leaving open the question of whether the mixed-motive or "but-for" standard applies. Malanga v. NYU Langone Med. Ctr., 2017 WL 4466612, at *5 (S.D.N.Y. Oct. 5, 2017). But other judges in this District have taken guidance from the Supreme Court's interpretation of the phrase "because of" in other statutes to import a "but-for" causation standard into the FCA. Lawrence, 2017 WL 3278917, at *7; Dhaliwal v. Salix Pharm., Ltd., 2017 WL 4083180, at *6 (S.D.N.Y. Sept. 14, 2017). Malanga claims that the Supreme Court's decision in University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 2517, 2529 (2013), which held that the phrase "because of" creates a "but-for" causation standard in Title VII employment retaliation cases, is inapposite and limited to the Title VII context. However, the Supreme Court's interpretation of that phrase appears to be based on a textual interpretation rather than a discernment of the

6

specific purpose behind the statute. Moreover, in a case regarding the Age Discrimination in Employment Act (ADEA), the Supreme Court interpreted the same phrase to impose a "but-for" standard of causation. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 179 (2009) ("[T]he ADEA must be read . . . the way Congress wrote it.").

While Malanga cites to a potpourri of decisions that recognized the "motivating factor" standard in FCA cases, the same can be said for a growing number of courts that have imposed a "but-for" standard. United States ex rel. King v. Solvay Pharm. Inc., 871 F.3d 318, 333 (5th Cir. 2017) (to survive summary judgment in FCA case, "[r]elators must point to evidence creating a genuine issue of material fact that their complaints were the but-for cause of their terminations"); Armstrong v. Arcanum Grp. Inc., 2017 WL 4236315, at *3 (D. Colo. Sept. 25, 2017) ("[T]he statutory phrase 'because of' connotes a more stringent causal connection than 'motivating factor' does."). Most recently, the Third Circuit squarely held that "retaliation claims under the FCA require proof of 'but-for' causation" based largely on the Supreme Court's rationale in Nassar and Gross. DiFiore v. CSL Behring, LLC, --- F.3d ----, 2018 WL 266123, at *5 (3d Cir. Jan. 3, 2018).

In this Court's view, a District of Columbia decision is instructive: "where Congress has given plaintiffs the right to sue employers for adverse actions taken against them by their employers 'because of' X, plaintiffs may succeed only by showing that X was a 'but-for' cause of the adverse action, not merely one of several 'motivating factors.'" United States ex rel. Schweizer v. Oce N. Am., 956 F. Supp. 2d 1, 13 (D.D.C. 2013). In view of this authority, this Court joins the chorus of courts recognizing a "but-for" causation standard under the FCA.

III. Motion to Exclude Witness Statements

Malanga seeks to preclude NYU from using four witness statements of former and current NYU employees who worked alongside Malanga during the relevant period. (See NYU's Rule 56.1 Statement, ECF No. 79, Exs. I, J, K, and M.) Malanga contends that these witness statements constitute hearsay since it appears that none of these witnesses will actually testify at trial. Moreover, Malanga argues that these statements, which reference a series of derogatory remarks that Malanga made to her co-workers, are highly prejudicial and irrelevant to her retaliation claim.

NYU claims that these witness statements will not be offered for the truth of the matters asserted, but for impeachment purposes or to demonstrate context, state of mind, or motive. (NYU's Memo. of Law in Opposition to Exclusion of Witness Statements ("Witness Statements Opp."), ECF No. 113, at 2–3.) Importantly, NYU argues that these witness statements are relevant to its principal defense, which is that it terminated Malanga for non-retaliatory, legitimate reasons arising from its investigation into Malanga's alleged workplace misconduct.

"For out-of-court statements to be received in evidence for a purpose other than their truth, the proponent must satisfy Federal Rules of Evidence 401 and 403, that is, (1) the non-hearsay purpose for which the evidence is offered must be relevant and (2) the probative value of the evidence for this non-hearsay purpose must not be outweighed by the danger of unfair prejudice." United States v. Paulino, 445 F.3d 211, 217 (2d Cir. 2006) (citing Ryan v. Miller, 303 F.3d 231, 25253 (2d Cir. 2002)). NYU asserts that because these witnesses were "interviewed by NYU as part of its investigation into complaints about [Malanga's]

8

unprofessional and offensive conduct," their statements go to the heart of establishing a defense that Malanga was terminated for non-retaliatory reasons. (Witness Statements Opp. at 1.)

As a general matter, hearsay witness statements may serve non-hearsay purposes, especially where, as here, they are critical to the defense. But the specific four affidavits at issue here raise the risk that prejudice or confusion will substantially outweigh their probative value. First, the affidavits are dated July 2017—several years after NYU conducted the investigation it claims served as the non-retaliatory basis for Malanga's termination. The timing of these affidavits, along with their carefully constructed language, suggest that they were created only for litigation purposes. They also replicate each other with conclusory allegations. Second, NYU may offer other evidence to bolster its defense that Malanga's termination was based on her workplace conduct, and not for FCA-related activity. Third, while NYU asserts these witness affidavits would serve non-hearsay purposes, the reality is that a jury could misconstrue them as the truth, even with a curative instruction directing them not to do so. Asking a jury to disregard whether the statements, which characterize Malanga in a negative light, are true and to consider them only for whether NYU had a legitimate reason to fire Malanga would also confuse the jury and unfairly prejudice Malanga.

Accordingly, Malanga's motion precluding the admission of these four witness statements is granted.

## CONCLUSION

For the foregoing reasons, Malanga's motion regarding the FCA's notice standard for a fraud-alert employee is granted. NYU's motion regarding the but-for causation standard is granted. Malanga's motion to exclude NYU's witness statements is granted. The Clerk of Court is directed to terminate all pending motions.

Dated: January 9, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.